BOYLE'S ADM'R.  to bring them before the Court, having entered their ap-
*vs*
BOYLE.  pearance in this Court.   As to the defendants, Joseph
Watkins, Thomas Ruggles, Joseph Spense, Andrew
May, and Bailey Briant, we are not satisfied that
either were in possession or claimed any land within the
patent and entry of complainants, when surveyed accord-
ing to the opinion of this Court.   The decree is, there-
fore, as against these defendants, reversed, and the cause
remanded with directions to dismiss complainants' bill
as to them, unless, at the instance of complainants, it
should be ascertained that they were in possession and
claimed land within the bounds of complainants patent
and entry, as surveyed at the institution of this suit, and
in such event, there should be a decree accordingly.   As
to the other defendants the decree is affirmed.

*Woolley, Cates & Lindsey* for appellants:. *Hord and
Beatty* for appellees.

---

CHANCERY.          Boyle's administrator, &c. *vs* Boyle.

Case 110.               ERROR TO THE GARRARD CIRCUIT.

*Partnerships.   Administrators.   Sureties.*

June 11.    JUDGE MARSHALL delivered the opinion of the Court.

THIS bill was filed in the name of John B. Boyle, in-
The case stated.  fant heir of John Boyle, deceased, by H. Arnold, his
guardian, against Alexander Boyle, jr. as surviving part-
ner of John and Alexander Boyle, to have an account
and settlement of the partnership, and also against the
said Alexander as administrator of said John, to have an
account and settlement and distribution of the estate of
said decedent, for which purpose the securities in the ad-
ministration bond, and also the widow of the deceased,
were made defendants, and as the administrator is insol-
vent, the contest upon this latter branch of the case is
substantially one between the distributees and the secu-
rities of the administrator.

The objection to uniting these apparently distinct de-
One of two part-  mands and separate liabilities in the same suit, is suffi-
ners who be-
comes the ad-  ciently answered by the fact that the same person is at

once the surviving partner and the administrator, and that as the personal assets of the firm being insufficient to pay its debts, and the surviving partner insolvent, the separate estate of the deceased partner, in the hands of the administrator, was, to some extent, properly applicable to the discharge of the debts of the firm, and the settle. ment of both accounts has thus become necessary for the attainment of the principal object of the suit. The diffi. culty has also been suggested as to the principles upon which the partnership account is to be stated so as to as- certain, as between the distributees and the securities of the administrator, the balance which is to be brought from that account into the administration account, and how far the securities are to be affected by the 'failure of Alex. Boyle to appropriate the funds of the firm to the discharge of its debts, and his consequent application of the estate of the intestate to that purpose. But as it was clearly the duty of Alexander Boyle, as surviving partner, to ap. ply the available funds of the firm to the payment of its debts, he could not, as administrator of the deceased part- ner, charge his estate with the payment of the firm debts without also charging himself, as administrator, with the funds of the firm which he had in his hands, for the pay- ment of those debts, and in this respect, we think, his se- curities can occupy no better attitude than himself.

ministrator of his deceased part- ner, is with his sureties in the administration, liable to distrib- utees, for slaves sold and their hire, to pay part- nership debts, whilst partner- ship funds re- mained out of which to pay firm debts.

If the administration of the deceased partners estate had been granted to a different person, it would have been his duty to have saved the estate in his charge, as far as practicable, from being subjected to the firm debts, and to have secured from the surviving partner, as far as practicable, a reimbursement of such sums as the admin- istrator might have been compelled to pay for the firm, and his failure to use proper diligence in this respect would have been a mal-administration for which he and his securities would have been liable. As the two char- acters were united in the same person, it was a mal-ad- ministration in him to throw upon the estate of his intes- tate the debts of the firm, for the payment of which he had the funds of the firm in his hands, and neither he nor his securities can avail themselves of such an act as en- titling them to a credit in the accounts of an insolvent

Boyle's adm'r.
*vs*
Boyle.

administrator, whereby the loss will be thrown wholly upon those whom they were bound to secure against loss by mal-administration. Nor could the administrator, by mere election to pay the firm debts out of the intestates estate when he had the firm funds in his hands, create such a necessity for selling the slaves of that estate as would relieve either him or his securities from the responsibility attaching to an unnecessary sale of slaves by an administrator. But the sale might be justified if the debts of the firm were pressing upon him, and the appropriate funds could not be realised in time to meet the exigency.

But where there are no partnership funds he is justifiable in selling slaves of the deceased partner to pay one-half the debts or all in case of his own insolvency, and this will be no mal-administration.

Upon these principles the securities of A. Boyle, jr. may in effect be held responsible for his solvency, to the extent that he had available funds of the firm in his hands, while he was administrator of the deceased partner; and this is just, because to that extent he was bound to save the estate of the deceased from loss, by payment of the firm debts, and he had in his hands the means of doing it: but as they cannot be chargeable for his solvency as surviving partner, to any greater extent, it follows that as in case of the insolvency of the surviving partner, after the exhaustion of the funds of the firm in his hands, the estate of the deceased partner is properly resorted to for the payment of the remaining liabilities of the firm, and the representative of that estate may and must pay the entire residue, with a right of recourse for one half only against the insolvent survivor, and as such administrator, if a separate person, would be entitled to a credit in his administration accounts for the entire residue which might thus be paid, so in the present case, assuming the insolvency of the surviving partner, the administration account, as between the securities and the distributees, is entitled to a credit for the entire excess of the firm debts paid by the administrator out of the decedent's estate, beyond the amount of the partnership funds which were in his hands, and the securities should not be charged with the one half of this excess because the insolvent survivor, who is also the administrator of the deceased partner, is liable for it.

In applying these principles to the actual adjudgment of the accounts before us the principal points of difficul-

ty are in ascertaining the amount of partnership funds
which survived to Alex. Boyle, and the facts upon which the necessity of selling the slaves depends. The books of the firm came to the possession of the surviving partner, and although one of them seems at one time to have been lodged in the Clerk's Office, no reference is made to it by the Commissioner, in this report or statement of accounts, and as the others were withheld that may have been withdrawn, these circumstances may authorize unfavorable inferences against the surviving partner and administrator, from the effect of which the sureties cannot altogether escape. But it is still necessary that there should be some proof, direct or circumstantial, to authorize a specific charge against them for this item. The Commissioner has charged as being due to the firm, on the death of John Boyle, the sum of $725, upon the testimony of H. Arnold, by whom, as guardian of the infant complainant, this suit is brought, and whose evidence on this point consists merely in a statement of an admission by Alexander Boyle that there was due on the books a little over $700. The deposition of H. Arnold having been properly excluded, on the ground of his interest in the cause, his statement before the Commissioner, if not called for by the opposite party, might and should have been disregarded in the final consideration of the case, and there would then remain only the deposition of Tabitha Arnold.

The admission, however, as proved by her seems to have been made shortly after the death of John Boyle, and as may be inferred, before Alexander Boyle became his administrator. And although H. Arnold, in his statement before the Commissioner, proves a similar admission as having been afterwards made, yet we cannot admit that a general admission of the amount due upon the books, made as this was, under circumstances not requiring or implying precision, should authorize a specific charge, as against the securities, of that amount as being actually available to the firm. The evidence itself is of the weakest class, and whether admissible at all, as against the sureties, is a matter of doubt. We do not feel satisfied, therefore, to sanction this charge as it stands, since

BOYLE'S ADM'R.
vs
BOYLE.

in the actual attitude of the parties, it is in effect a charge against the sureties.   At all events, some allowance should have been made for  bad debts and for small counter demands, which may not otherwise appear against the firm. Twenty-five per cent. might be a reasonable deduction on this account.    But as the case will have to be re-submitted to an auditor, when this matter may be open to further proof or estimate, it is unnecessary to fix the sum.

With regard to the administration accounts, the princi-pal question grows  out of the sale of the slaves, which, so far as it was unnecessary, would subject the adminis-trator to a charge not only for their value but also for their hire.

It appears that there was a  deficiency of the personal estate of John  Boyle, which justified the  sale of one of his slaves;  and also  a deficiency in the  personal assets of the firm which justified the further sale of one or more, the extent of  the  necessity being  dependent upon the ex-tent of the deficiency, and  also  upon  the availability of the funds of  the  firm  to meet  the  demands against it. In ascertaining this  necessity it would  be  improper to bring into the account the value of the rent of the  mill, (which was the subject of the partnership,) for the time it was occupied by Alexander Boyle after the sale of the slaves, and the same principle may  exclude some of the smaller items.

The charge for hire of  the slaves of  J. Boyle, from his death in July, 1837, until the end of that year, is improp-er unless it  appeared that  the administrator had actually taken  them into his possession or hired them out.    And the charge for negro hire, after the sale of  the slaves, which will doubtless be reduced  and  may  perhaps  be thrown out entirely, upon a  re-adjustment of the accounts under the principles of  this opinion, seems  to be higher than is authorized by the evidence of their value.    It seems that one considerable debt of the firm  was in  part directly paid by the sale of  one of  the slaves to the creditor,  and we regard this sale as justifiable, and,  therefore, as so far precluding the charge for hire.

We perceive no valid objection to the Commissioner's report except in reference to the items which we have no-

ticed, and as a re-statement of the account, on the princi-ples herein indicated, will apparently reduce the sum for which the sureties of A. Boyle are chargeable considera-bly below that which they have been decreed to pay, the decree against the administrator and securities is, there-fore, reversed and the cause remanded for further proceed-ings and decree conformable to this opinion, and in which it will be proper to provide for the interest of the wid-ow of John Boyle, deceased, who is entitled to one-third of the distributable fund.

The decree against Alexander Boyle alone, upon the partnership, is not understood to be complained of by him and will not be reversed upon the cross errors if indeed they were intended to reach it.

*Goodloe and Bradley* for plaintiffs: *Turner* for defen-dant.

